United States District Court
Southern District of Texas
**ENTERED**
July 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PCS SOFTWARE, INC., § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-23-108 |
| § | |
| DISPATCH SERVICES, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Dispatch Services, Inc., contracted with PCS Software, Inc. for a software license. Dispatch allegedly quickly learned that the PCS software did not meet its needs, so it stopped paying PCS the contractual setup and subscription fees. PCS sued for breach of contract. Dispatch answered and counterclaimed for fraudulent inducement and related causes of action. The court previously dismissed Dispatch's counterclaims in part but granted leave to amend. Dispatch now moves for leave to reassert its counterclaims in a second amended answer and counterclaims. This opinion denies Dispatch's motion for leave and grants PCS's motion to dismiss Dispatch's second amended counterclaims. The reasons are set out below.

**I.      Background**

In May 2024, the court dismissed Dispatch's first amended counterclaims, except for its counterclaim for negligent misrepresentation. (Docket Entry No. 47). The court's dismissal of Dispatch's counterclaims for fraudulent misrepresentation, fraudulent inducement, and breach of warranty were without prejudice. Dispatch now moves for leave to file its second amended counterclaims. (Docket Entry No. 48). PCS responded with a motion to dismiss, arguing that

Dispatch's proposed second amended counterclaims suffer the same pleading defects that led to dismissal of the first amended counterclaims—primarily, a failure to plead fraud with the particularity required by Rule 9(b).  (Docket Entry No. 51).  Dispatch has responded.  (Docket Entry No. 52).

Based on the pleadings, the briefing, and the applicable law, Dispatch's motion for leave is denied, PCS's motion to dismiss is granted, and Dispatch's counterclaims are dismissed.  The reasons are set out below.[1]

**II.    The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

---

[1] The factual background underlying the parties' claims and counterclaims is set out in detail in the court's May 2024 memorandum and opinion.  (Docket Entry No. 47).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation and quoting reference omitted).

Counterclaims asserted in an answer are subject to the same pleading standards as complaints. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

### III. Analysis

#### A. The Fraud Claims

PCS concedes that Dispatch's second amended counterclaims allege more fraud-related particularities than its first amended counterclaims. But PCS argues that Dispatch still falls short of the Rule 9(b) standard. The court agrees.

The fundamental problem with Dispatch's new fraud allegations is that they are disjointed. In the "factual background" section of the counterclaims, Dispatch provides sufficient detail about what was allegedly represented about the software. (*See* Docket Entry No. 49 at ¶¶ 7–14). Dispatch identifies specific functions that PCS allegedly represented its software had. (*Id.*). However, those paragraphs do not allege who made the representations or when they were made, as Rule 9(b) requires. Dispatch alleges those particulars only in the "causes of action" section, in support of its fraud and fraudulent inducement claims. (*Id.* at ¶¶ 27–42). But while these paragraphs identify names and dates, they do not allege *what* was said or *why* it was fraudulent. Instead, they allege, repeatedly, that specific PCS representatives made "representations about the capabilities of [the] software." These representations, unlike those alleged in the "factual background" section, are insufficiently specific to satisfy Rule 9(b).

There are two instances in the second amended counterclaims where the who, what, and when harmonize: (1) Dispatch alleges that, on April 27, 2022, "Bruce Meighan and/or Chase Carney" stated by email that "PCS is known for rapid go lives"; and (2) on May 8, 2022, "Bruce Meighan and/or Chase Carney again provided examples of PCS API's dashboards and reports, informing Mr. Hoover that these could be used or modified for your environment." (*Id.* at ¶¶ 32–33 (alterations adopted)). However, with respect to these statements, Dispatch fails to allege another critical Rule 9(b) ingredient: *why* these alleged misrepresentations were false. *See On Site*

4

*Container & Compactor Repair, Inc. v. BFI Waste Servs. of Texas, LP*, No. 4:20-CV-03394, 2021 WL 4095146, at *3 (S.D. Tex. Aug. 19, 2021) (dismissing a fraud claim because "there [was] no explanation or discussion as to why th[e] statement is false"). Dispatch does not allege that it was untrue that PCS was "known for rapid go lives." Even if Dispatch had alleged that the statement was false, it was mere "puffery." *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 373 (5th Cir. 2004); *see also Texas Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App. 2001) ("Johnson's comments amounted to nothing more than puffing or dealers' talk. As such, they do not amount to actionable misrepresentation."). The court cannot infer that the second statement was fraudulent because Dispatch does not explain the meaning of "API's dashboards and reports" or allege that those "dashboards and reports"—whatever they are—could not actually "be used or modified for [Dispatch's] environment."

Finally, Dispatch alleges that PCS's mental state at the time it made the statements was, essentially, recklessness. According to Dispatch, PCS made the representations

> in conscious ignorance of whether the [software] would ever be capable of meeting Dispatch's needs. When it represented the [s]oftware as capable of these requirements, the truth was that the [s]oftware *might* become capable of these requirements.
>
> In essence, PCS did not have a [software] that could meet Dispatch's needs as contemplated by the parties at the time the Agreement was signed, and instead PCS intended to utilize Dispatch's payments to subsidize the development of its software.

(Docket Entry No. 49 at ¶ 44–45).

This allegation is inconsistent with a claim for fraudulent inducement, "a distinct category of common-law fraud that . . . involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). The Fifth Circuit's decision in *Ibe v. Jones* is instructive. 836 F.3d 516 (5th Cir. 2016). In that case, Superbowl ticketholders sued the National Football League because they were

5

left without seats on game day due to a failure of the NFL, and other entities with whom it contracted, to construct enough temporary seating. *Id.* at 522. The district court dismissed the ticketholders' claims of fraudulent inducement, fraudulent concealment, and negligent misrepresentation. *Id.* With respect to fraudulent inducement, the district court held:

> Without alleging facts supporting the allegation that Defendants did not intend to construct the temporary seats for which tickets were sold, Plaintiffs cannot recover on a theory of fraudulent inducement as to temporary seats that were not completed and approved by game day. . . . The Court finds that Plaintiffs' theory of fraudulent inducement as to temporary seating is not plausible.

*Id.* at 525. Following a trial on breach of contract, the ticketholders appealed. *Id.* at 523.

On appeal, the ticketholders argued that the district court erred in dismissing the fraudulent inducement claim because "they were not required to allege that the NFL had a specific intent not to perform the ticket contract, but only needed to allege that the NFL recklessly made a promise to perform." *Id.* at 525. The Fifth Circuit affirmed the dismissal, holding that: "Fraudulent inducement, as the district court understood, rests on a misrepresentation made with the intent to deceive and no intention of performing the act at the time the promise was made. Appellants' recklessness allegation was insufficient." *Id.* (citation omitted). The Fifth Circuit also rejected the ticketholders' argument that they had plausibly alleged that the NFL had a specific intent to defraud: "None of the[] [ticketholders'] allegations suggest an intent not to perform at the time the ticket contracts were sold. Indeed, given the frantic last-minute installation of seats and potential adverse publicity from intentional nonperformance, an inference of fraudulent inducement is untenable." *Id.* at 526.

Like the ticketholders in *Ibe*, Dispatch does not allege facts supporting a reasonable inference that PCS had no intention of performing under the contract when it made the alleged misrepresentations. On the contrary, Dispatch alleges that PCS represented that its software was capable of meeting Dispatch's needs with "conscious ignorance" of whether the software "would

ever be capable of meeting Dispatch's needs," and that "the truth was that the Software *might* become capable of these requirements." (Docket Entry No. 49 at ¶ 44). Dispatch alleges that "PCS intended to utilize Dispatch's payments to subsidize the development of its software" so that the software would "at some point, . . . conform to the representations it made to induce Dispatch into executing the [contract]." (*Id.* at ¶¶ 45, 48). These allegations are analogous to the inadequate allegations in *Ibe* that the NFL recklessly promised that it would be able to provide enough seating without knowing whether that was true.

Dispatch's failure to cure the pleading deficiencies previously identified shows that further amendment would be futile. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). The fraud and fraudulent inducement claims are dismissed with prejudice.

        **B.**        **The Negligence Claims**

Dispatch's negligent misrepresentation claim is based in part on the same alleged statements as its fraud claims. (Docket Entry No. 49 at ¶¶ 50–53). Dispatch also alleges that PCS "failed to exercise reasonable care in hiring, training, and retaining Bruce Meighan and/or Chase Carney." (*Id.* at ¶ 56). Dispatch's negligence claims are barred by the economic-loss rule.

Under Texas law, the economic-loss rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007)). An exception to the rule exists when "a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim." *Ibe*, 836 F.3d at 526. In that case, "any damages

suffered as a result of the fraud sound in tort because the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id.* (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998)).

*Ibe* illustrates that the economic-loss rule bars negligence claims dependent on a contractual relationship, absent a validly pleaded fraudulent inducement claim. *See id.* ("Because there is no plausible case for fraudulent inducement, this exception carries no weight. The economic loss rule bars the [plaintiffs'] [fraudulent concealment and negligent misrepresentation] claims."). Because Dispatch has not alleged a fraudulent inducement claim that complies with the standard of Rule 9(b), there is no applicable exception to the economic-loss rule. *See id.* Dispatch's negligence claims are based on "the subject matter of [the] contract between the parties," and could not have arisen independent of the contract. *Id.* The claims are dismissed with prejudice.

## C. The Breach of Warranty Claim

As the court explained in its May 2024 memorandum and opinion, the parties' contract contains an "as is" clause that "unambiguously disclaims all warranties" except for certain enumerated warranties irrelevant here.[2] (Docket Entry No. 47 at 11). Fraudulent inducement can

---

[2] The "as is" clause provides:

> EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN SECTION 6.1, THE SERVICE AND ALL PRODUCTS ARE PROVIDED "AS IS". PROVIDER SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING, USAGE OR TRADE PRACTICE. WITHOUT LIMITING THE FOREGOING, PROVIDER MAKES NO WARRANTY OF ANY KIND THAT THE SERVICE OR PRODUCTS, OR ANY OUTPUT OR RESULTS OF THE USE THEREOF, WILL MEET CLIENT'S OR ANY OTHER PERSON'S REQUIREMENTS, OPERATE WITHOUT INTERRUPTION, ACHIEVE ANY INTENDED RESULT, BE COMPATIBLE OR WORK WITH ANY SOFTWARE, SYSTEM, OR OTHER

make an "as is" clause unenforceable, *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 450 (5th Cir. 2000), but Dispatch has not pleaded fraudulent inducement with the required particularity. Accordingly, the "as is" clause bars Dispatch's breach of warranty counterclaim. This claim is dismissed, without prejudice.

### IV. Conclusion

Dispatch's motion for leave to amend is denied. (Docket Entry No. 48). PCS's motion to dismiss Dispatch's second amended counterclaims is granted. (Docket Entry No. 51).

SIGNED on July 16, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

SERVICES, OR BE SECURE, ACCURATE, COMPLETE, FREE OF HARMFUL CODE, OR ERROR FREE. ALL THIRD-PARTY MATERIALS ARE PROVIDED "AS IS", AND ANY REPRESENTATION OR WARRANTY OF OR CONCERNING ANY THIRD-PARTY MATERIALS IS STRICTLY BETWEEN CLIENT AND THE THIRD-PARTY OWNER OR DISTRIBUTOR OF SUCH THIRD-PARTY MATERIALS.

(Docket Entry No. 6-1 at 8).