IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | |
|---|---|
| PCS SOFTWARE, INC. § § *Plaintiff* § § DISPATCH & SERVICES, INC. § § *Defendant* § § § § | Civil Action No. 4:23-cv-108 |

**DEFENDANT DISPATCH'S RESPONSE TO PCS'S POST-TRIAL BRIEF ADDRESSING DISPATCH'S LIQUIDATED DAMAGES ARGUMENT**

Date:   May 14, 2025.

Respectfully submitted,

**MAYER, LLP**

_____
Nathaniel R. Martinez
SBN:  24075725
Federal ID 27522
Raymond Johnson
SBN: 24129633
Federal ID 3866761
2900 North Loop West, Suite 500
Houston, Texas 77092
Tel: (713) 868-5560
Fax: (713) 864-4671
E-Mail: nmartinez@mayerllp.com
E-Mail: rjohnson@mayerllp.com
**ATTORNEYS FOR DEFENDANT DISPATCH & SERVICES, INC.**

1

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ............................................................................................. 4

II. SECTION 2.7.4 IS AN UNENFORCEABLE LIQUIDATED DAMAGES CLAUSE BECAUSE IT IMPOSES A HARSH PENALTY. ................................................................. 4

    A. PCS cannot escape that Section 2.7.4 is an unenforceable liquidated damages clause simply because the parties bargained for it. ................................................................. 4

    B. Section 2.7.4 is an unenforceable penalty. ............................................................... 6

    C. Section 2.7.4 being inclusive of an otherwise valid contract does not save it from being an Unenforceable Penalty. ................................................................. 10

III. DISPATCH DID NOT WAIVE THE UNENFORCEABLE PENALTY ARGUMENT .... 11

IV. CONCLUSION .............................................................................................................. 18

## TABLE OF AUTHORITIES

*Allied Chem. Corp. v. Mackay*, 695 F.2d 854 (5th Cir. 1983) .................................................. 12, 13

*Community Development Service, Inc. v. Replacement Parts Manufacturing, Inc.*, 679 S.W.2d 721 (1984) ................................................................................................................................. 11

*Crossmark, Inc. v. Hazar*, 124 S.W.3d 422 (Tex. App.—Dallas 2004, pet. denied) ....................... 5

*Crown Castle Fiber v. City of Pasadena*, 76 F.4th 425 (5th Cir. 2023) .................................. 17, 18

*FPL Energy, LLC v. TXU Portfolio Management Co., L.P.*, 426 S.W.3d 59 (Tex. 2014) .............. 9

*LSREF2 Baron LLC v. Tauch*, 751 F.3d 394 (5th Cir. 2014) ......................................................... 17

*Mayfield v. Hicks*, 515 S.W.2d 571 (1978) ............................................................................ 10, 11

*NewCSI, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251 (5th Cir. 2017) .................................. 13, 14

*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009) ...................................... 12, 15, 16

*Phillips v. Phillips*, 820 S.W.2d 785 (Tex.1991) ................................................................10, 11, 12

Restatement (Second) of Contracts § 356 ........................................................................................11

*Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008) ................................................................ 16, 17

*State v. Alpha Oil & Gas, Inc.,* 747 S.W.2d 378 (Tex.1988) ............................................................11

*Steadfast Ins. Co. v. SMX 98, Inc.*, 2008 WL 62199 (S.D. Tex. Jan. 3, 2008) ................... 4, 6, 7, 10

*Stewart v. Basey*, 245 S.W.2d 484 (1952) .................................................................................. 8, 10

*Valence Operating Co. v. Dorsett,* 164 S.W.3d 656 (Tex. 2005) ...................................................... 4

Defendant Dispatch & Services, Inc. ("Dispatch") respectfully submits this Response to PCS's Post-Trial Brief Addressing Dispatch's Liquidated Damages Argument. In support thereof, Dispatch responds as follows:

I. SUMMARY OF ARGUMENT

Section 2.7.4 is unenforceable because it imposes a harsh penalty.

Enforcement of Section 2.7.4 would result in a disproportionate windfall to PCS of $1,437,426, all Fees due for the entire three-year initial term, irrespective of the loss or damage actually sustained or magnitude of the breach.

PCS admits that damages were "capable of precise calculation" thereby conceding that harm caused by Dispatch was capable of estimation when the Agreement was executed.

Despite PCS and Dispatch agreeing to Section 2.7.4, such agreement does not save it from being a harsh penalty.

Dispatch did not wave the unenforceable penalty argument because the defense of penalty is an exception to the general rule that an affirmative defense must be pleaded.

Even if the unenforceable penalty defense must be pleaded, Dispatch's failure was not fatal because PCS had sufficient notice and was not unfairly prejudiced in its ability to respond.

II. SECTION 2.7.4 IS AN UNENFORCEABLE LIQUIDATED DAMAGES CLAUSE BECAUSE IT IMPOSES A HARSH PENALTY.

**A. PCS cannot escape that Section 2.7.4 is an unenforceable liquidated damages clause simply because the parties bargained for it.**

PCS attempts to argue that liquidated damages enforceability analysis is inapplicable to Section 2.7.4 because the parties bargained for it. (*See* Docket Entry No. 133 at 2-3) ("Section 2.7.4 is not a 'liquidated damages' provision under all available precedent. This clause represents

the very essence of contract law's fundamental purpose: to provide the nonbreaching party with exactly what it bargained for—no more, no less."). This is circular reasoning that misapplies the law.

"Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations…." *Steadfast Ins. Co. v. SMX 98, Inc.*, 2008 WL 62199, at *6 (S.D. Tex. Jan. 3, 2008) (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex.2005). "Whether a contract term is a liquidated damages provision is a question of law for the court to decide." *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 664 (Tex. 2005) (citing *Phillips v. Phillips,* 820 S.W.2d 785, 788 (Tex.1991) (citing *Farrar v. Beeman,* 63 Tex. 175, 181 (1885))).

Section 2.7.4 is a liquidated damages clause because it sets in advance the damages Dispatch must pay for failing to comply with enumerated covenants. As this Court found in *Steadfast* where the premium-charge provision fit "squarely" within the definition of a liquidated damages provision because it set in advance damages the breaching party must pay for failing to comply with certain requirements, so too does Section 2.7.4 when it accelerates a fixed amount of $1,437,426, all Fees due for the entire three-year initial term that Dispatch must pay for failing to comply with enumerated obligations.

Further, PCS appears to argue that acceleration clauses cannot categorically be liquidated damages clauses due to timing of payments. (Docket Control No. 133 at 3). For reasons unknown to Dispatch, PCS overstates its legal precedence by claiming that the "Fifth Circuit and Texas courts have consistently recognized the key distinction between acceleration clauses and liquidated damages provisions." *Id.* Yet, PCS provides only one case from the Dallas court of appeals. *Id.* Regardless, PCS completely misconstrues *Crossmark's* holding and conflates two distinct

analyses: whether a provision can be classified as a liquidated damages clause and whether a liquidated damages clause is an unlawful penalty. *Id.* As established below, the unlawful penalty analysis cannot apply until the court determines that the provision at issue is a liquidated damages clause. In *Crossmark,* the court held that "the acceleration clauses do not contain **unlawful penalties** and do not violate public policy. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied). Emphasis added. Therefore, logic and the law dictate that acceleration clauses can be liquidated damages clauses.

**B. Section 2.7.4 is an unenforceable penalty.**

Enforcement of Section 2.7.4 would result in a disproportionate windfall to PCS of $1,437,426, all Fees due for the entire three-year initial term, irrespective of the loss or damage actually sustained or magnitude of the breach.

To determine whether a liquidated damages provision is an unenforceable penalty, a court examines whether (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation. *Steadfast Ins. Co. v. SMX 98,* 2008 WL 62199, at *8 (S.D. Tex. Jan. 3, 2008) (citing *Stewart v. Basey,* 245 S.W.2d 484, 486 (1052)) (quoting Restatement of Contracts § 339) (internal quotation marks omitted).

Under the first prong, the acceleration provision in Section 2.7.4 of all Fees due amounting to $1,437,426 is an unreasonable forecast of just compensation for the harm caused by the breach because the acceleration of $1,437,426 of all Fees provides the same remedy to any breach applicable to Section 2.7.4, regardless of the magnitude of the breach.

*Steadfast* succinctly articulates the well-established Texas precedent on "just compensation" as follows:

> In *Stewart v. Basey,* the Texas Supreme Court…held the liquidated damages provision in the contract at issue unenforceable because it assigned the same penalty for breach of any of the covenants, regardless of the magnitude of the breach or the consequences. Since *Stewart,* courts have continued to hold that contract damages provisions are unenforceable if they provide the same remedy regardless of the magnitude of the breach, because such a provision is not a reasonable estimate of damages. *See Phillips,* 820 S.W.2d at 789-90 (Tex.1991) (holding that a contractual provision providing that a breaching party pays ten times the actual damages was an invalid penalty provision because the harm was not incapable of estimation and because the provision was not a forecast of actual damages); *Cmty. Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.,* 679 S.W.2d 721, 727 (Tex. App.—Houston [1st Dist.] 1984, no writ) (finding a fixed damages amount unenforceable because even though the parties agreed that it would constitute damages in the event of breach, the provision was not a reasonable estimate of the amount needed as compensation; all defaults, even a minor one, resulted in the same penalty); *Mayfield v. Hicks,* 575 S.W.2d 571, 575 (Tex. Civ. App.—Dallas 1978, writ ref d n.r.e.) (finding that a damages clause in an equipment lease constituted an unenforceable penalty because even a minor default by the lessee permitted the lessor to take the equipment and demand payment of all lease payments and noting that "[a] provision is a penalty if it provides for unreasonable payments for a minor breach.").
>
> **\*13** "A provision becomes a penalty if it provides for unreasonable damages for trivial breaches as well as reasonable damages for major breaches." *Cmty. Dev. Serv., Inc.,* 679 S.W.2d at 727 (citations omitted). This is so even if the claim at issue is actually a more major breach. *See Mayfield,* 575 S.W.2d at 575-76 (finding that even though the appellees had pleaded that the breach was for unpaid rentals, the penalty clause requiring payment of all lease payments for any breach was unenforceable because it would provide a large penalty even for a minor breach).

*Steadfast* at \*12-13.

Here, Section 2.7.4 requires Dispatch to pay all Fees of $1,437,426 for any breach applicable to Section 2.7.4, regardless of the magnitude of the breach, including but not limited to Sections 2.3 and 4.8.8.

Misappropriating intellectual property rights under Section 4.8.8, highly coveted for any software company, is a major breach applicable to Section 2.7.4. Conversely, Section 2.7.4 requires Dispatch to pay all Fees of $1,437,426 if the first implementation fee of $18,106.33

7

remains unpaid conceivably 4 days after its due under Section 2.3. Such a breach could then lead to draconian penalties accelerating all Fees of $1,437,426 under 2.7.4 that is disproportionate to any actual damage that PCS may suffer.

Much like the damages provision in *Steadfast* that imposed a fixed remedy, unrelated to either the magnitude of the breach or of any harm that might have resulted, Section 2.7.4 also imposes the same fixed remedy of all Fees due, $1,437,426, through the expiration of the three-year initial term, regardless of the magnitude of the breach or any harm that might have resulted. Section 2.7.4 would provide the same penalty for various breaches that are drastically different in nature and could not possibly result in the same measure of damages. Thus, Section 2.7.4 fails to reasonably forecast what just compensation would be for Dispatch's breach.

PCS's contention that the $1,437,426 representing all Fees due for the entire three-year initial term is the" exact economic harm suffered" is not supported by *Stewart* (Docket Control No. 133 at 3). In *Stewart*, the court struck down a liquidated damages clause where the parties agreed to a sum less than 50% of the contracted monthly rental rate for the remainder of the term. 245 S.W.2d 484, 485. In this case, PCS's actual loss as a result of Dispatch's breach amounts to a total of $18,106.33. (Docket Entry No. 87 at 7). If PCS is able to recover the entirety of the contracted three-year initial term, it would receive a disproportionate windfall of $1,437,426 violating the principle of just compensation.

Simply, Section 2.7.4 wholly fails the "just compensation" analysis under all available precedent because enforcement of Section 2.7.4 would result in a harsh penalty of $1,437,426.

Under *Stewart's* second prong, there is no basis to conclude that the harm caused by Dispatch failing to comply with the applicable covenants in Section 2.7.4 was incapable of estimation when the parties executed the Agreement.

In fact, PCS admits that the damages were "capable of precise calculation." (Docket Control No. 133 at 4). PCS then goes on to describe this precise calculation as "basic arithmetic," that can be reached by a simple summation of the payment table from the Contract. *Id.* Therefore, PCS has conceded the second prong of the penalty analysis.

PCS's admission notwithstanding, Section 2.7.4 also fails the second prong under *Stewart* because at the time the Agreement, the actual harm resulting from Dispatch's breach could have easily estimated the value of Dispatch's breach based on the payment schedule it assigned, and the costs of its typical services provided under the Agreement.

| Month 1  | $39,000.00  | Month 13 | $40,147.06 | Month 25 | $40,147.06 |
|----------|-------------|----------|------------|----------|------------|
| Month 2  | $0.00       | Month 14 | $40,147.06 | Month 26 | $40,147.06 |
| Month 3  | $0.00       | Month 15 | $40,147.06 | Month 27 | $40,147.06 |
| Month 4  | $40,147.06  | Month 16 | $40,147.06 | Month 27 | $40,147.06 |
| Month 5  | $40,147.06  | Month 17 | $40,147.06 | Month 29 | $40,147.06 |
| Month 6  | $40,147.06  | Month 18 | $40,147.06 | Month 30 | $40,147.06 |
| Month 7  | $40,147.06  | Month 19 | $40,147.06 | Month 31 | $40,147.06 |
| Month 8  | $40,147.06  | Month 20 | $40,147.06 | Month 32 | $40,147.06 |
| Month 9  | $40,147.06  | Month 21 | $40,147.06 | Month 33 | $40,147.06 |
| Month 10 | $40,147.06  | Month 22 | $40,147.06 | Month 34 | $40,147.06 |
| Month 11 | $40,147.06  | Month 23 | $40,147.06 | Month 35 | $40,147.06 |
| Month 12 | $40,147.06  | Month 24 | $40,147.06 | Month 36 | $40,147.12 |

*See* Docket Entry No. 6, Exhibit A.

> Above are details regarding any supplemental payment terms in addition to those set forth in Section 3 of the Agreement. Payment terms for any set up fees are fifty percent (50%) due and payable in 3 monthly installments of $18,106.33 starting on Product implementation commences (i.e., initial call/conversation, project kickoff or planning to implement the Products), and the remaining fifty percent (50%) due and payable at go live, and will be billed in 3 monthly installments of $18,106.33 upon the earlier of (a) Client's first production use of any Products or (b) sixty (60) days after the Product implementation commences. Client agrees to pay all fees, whether or not Client uses any Products during the applicable

*Id*.

At the time of contracting, PCS could clearly estimate damages in case Dispatch breached the contract, for example, by failing to make a monthly payment on a specific installment because

it cuts off its performance of services, and by extension, the expenses it incurred at a precise point in time. Because PCS's actual loss as a result of Dispatch's breach amounts to a total of $18,106.33, the $1,437,426 windfall would operate with no rational relationship to the actual damages. (Docket Entry No. 87 at 7); *see FPL Energy, LLC v. TXU Portfolio Management Co., L.P.*, 426 S.W.3d 59, 70-1 (Tex. 2014).

### C. Section 2.7.4 being inclusive of an otherwise valid contract does not save it from being an Unenforceable Penalty.

Despite PCS and Dispatch agreeing to Section 2.7.4 such agreement does not save it from being an unreasonable penalty. PCS's argument that Section 2.7.4 is not a penalty because the parties agreed to it is a *non-sequitur* fallacy and is precisely the argument that this Court found unpersuasive in *Steadfast*. *Steadfast* at *12 ("Courts have refused to enforce liquidated damages clauses in otherwise valid contracts if those clauses are unreasonable penalties, despite the fact that the clauses are 'agreed to.'") (citing *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 435 (Tex. App-Dallas 2004, pet. denied) ("[I]f the liquidated damages provision contains an unlawful penalty, public policy may forbid enforcement of the agreed-to measure of damages.") (citations omitted); *see also Phillips v. Phillips*, 820 S.W.2d 785 (Tex.1991) (finding that an agreed damages provision constituted an unenforceable penalty).

PCS's contention that 2.7.4 is not punitive because it was the measure of damages already agreed upon is fundamentally flawed. Under PCS's theory, any agreed to liquidated damages provision could never be an unenforceable penalty. *Stewart* rejected this flawed reasoning affirming that parties do not have the right to bargain the principle of just compensation out of their contracts:

> [T]he right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just

  compensation for the loss or damage actually sustained….A party has no right to have a court enforce a stipulation which violates the principle underlying that rule.

*Stewart* at 486.

  Consistent with this Court's opinion in *Steadfast* and well-established precedent, this Court should reject this same theory that PCS proffers in this case.

  To the extent that PCS argues that the breach at issue is major, it does not save Section 2.7.4 from being a penalty because that question turns on whether the provision provides for reasonable compensation. *See Mayfield v. Hicks,* 515 S.W.2d 571, 575 (1978). The fact that the breach at issue may be material does not save the provision from being a penalty provision. *See Community Development Service, Inc. v. Replacement Parts Manufacturing, Inc.*, 679 S.W.2d 721, 727 (1984) ("It is immaterial that the actual breach was for default in tax and interest payments."). Additionally, analysis on Section 2.7.4 being void as a penalty is subject to being viewed at the time the Agreement was executed, not at the time the alleged breach occurred. *Mayfield* at 576.

  PCS's assertion that Section 2.7.4 gets it right in this situation has no bearing on whether the provision is facially invalid because it would provide the same penalty for various breaches, regardless of the magnitude. Thus, it is obvious that the parties did not adhere to the rule of just compensation. PCS justifies enforcement of the liquidated damages provision by over-relying on what Dispatch's obligations would have been had the Contract continued as planned. PCS omits consideration of its own obligations to provide three years of software services to Dispatch.

  III.  DISPATCH DID NOT WAIVE THE UNENFORCEABLE PENALTY ARGUMENT.

  Enforcement of Section 2.7.4 violates public policy even if the parties agreed to it. As the Texas Supreme Court has affirmed, the defense of penalty is an exception to the general rule that an affirmative defense must be pleaded or it is waived. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("[W]e hold that the defense of penalty is not waived by the failure to plead it if it is

apparent on the face of the petition and established as a matter of law. Enforcement of a penalty, like enforcement of an illegal contract, violates *790 public policy. Restatement (Second) of Contracts § 356; *see State v. Alpha Oil & Gas, Inc.,* 747 S.W.2d 378 (Tex.1988). It should not be done, even if the parties do not object.") *Id.* at 789-90.

    Here, PCS specifically plead Section 2.7.4 as its measure of damages:

> 23. In addition to its outstanding invoice balance in the amount of $160,303.02, Dispatch is liable to PCS for all fees during the three-year Initial Term, which immediately became due and payable under Section 2.7.4 of the Agreement upon PCS's termination, which totals an additional $1,277,122.98. Thus, Dispatch is liable to PCS for the total amount of $1,437,426.00, consisting of Dispatch's current outstanding invoice balance, Subscription Fees over the next 30 remaining months, and all Implementation Fees.

Docket Control No. 6 at 6.

    Similar to the plaintiff's pleading in *Phillips* who relied upon a contractual provision deemed an unenforceable penalty, to the extent that PCS's own pleading establishes that the contractual provision they rely upon is an unenforceable penalty, Dispatch was not required to plead penalty as an affirmative defense. As argued previously, Section 2.7.4 is facially invalid because it requires Dispatch to pay fixed damages of $1,437,426 equal to 79 times the actual damages of $18,106.50.

    Even assuming that the issue of Section 2.7.4 being an unenforceable penalty must have been pleaded as an affirmative defense, Dispatch's failure to plead the defense did not waive it in this case because PCS had sufficient notice and no prejudice to PCS resulted. In fact, PCS admitted that they had notice at least 4 months before trial proving that they were not unfairly surprised and had ample opportunity to respond.

    The Fifth Circuit has consistently held that although Rule 8(c) generally requires that any matter constituting affirmative defense be set forth in defendant's responsive pleading, where the

matter is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply precisely with the rule is not fatal. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854-855-56 (5th Cir. 1983) (citing *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir. 1981). An affirmative defense is not waived if the defendant "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Allied Chem. Corp.* at 856.

In *Allied Chem.,* the Fifth Circuit held that MacKay's failure to plead usury in his initial responsive pleading was not fatal. *Allied Chem. Corp.* at 855. The Court reasoned that because Mackay's usury defense was included in the trial court's pretrial order there was no surprise here and Mackay did not "lie behind the log." *Allied Chem. Corp.* at 856 (quoting *Bettes v. Stonewall Ins. Co.*, 480 F.2d 92, 94 (5th Cir. 1973). The Fifth Circuit concluded that Mackay "raised the issue at a pragmatically sufficient time, and Allied was not prejudiced in its ability to respond. *Id.* Construing the Rules to do substantial justice, we hold that the usury defense was not waived." *Allied Chem. Corp.* at 856.

Applying *Allied Chem.* to this case backs the conclusion that any failure on Dispatch's part to plead illegality in Dispatch's initial responsive pleading was not fatal. To an even greater degree than Mackay, Dispatch raised the liquidated damages argument at a pragmatically sufficient time. Not only did Dispatch raise the unenforceable liquidated damages defense again in the Court's pretrial order, Dispatch raised the defense at least 4 months before trial by PCS's own admission. (Docket Control Entry No. 133 at 2); (Docket Entry No. 79 at 3); (Docket Entry No. 84); (Docket Entry No. 86 at 5); (Docket Entry No. 97 at 4-5); (Docket Entry No. 97-1 at 7). Dispatch did not "lie behind the log" and PCS cannot credibly claim they were unfairly surprised. Thus, PCS was not unfairly prejudiced in its ability to respond. Construing the Rules to do substantial justice, this

13

Court should also hold that Dispatch's illegality defense of Section 2.7.4 being an unenforceable liquidated damages clause was not waived.

PCS's assertion that *NewCSI, Inc. v. Staffing 360 Sols., Inc.* "**explicitly** ruled that that the failure to contend a liquidated damages clause is an unenforceable penalty in a responsive pleading results in **complete** forfeiture of that argument" grossly distorts the Fifth Circuit's full analysis. (Docket Control No. 133 at 6). Emphasis added. 865 F.3d 251 (5th Cir. 2017).

PCS attempts to reframe *NewCSI* as supportive of its argument by taking the Fifth Circuit's holding that Staffing 360 was barred from contesting the legality of the liquidated damages clause under Rule 8 out of context. PCS does so by leaving out *NewCSI's* discussion of the *Lee* exception.

In *NewCSI,* the Fifth Circuit affirmed that "[A] defendant who fails to raise an affirmative defense in its responsive pleading forfeits that defense ***unless*** the "defendant raise the issue at a pragmatically sufficient time" and "the plaintiff is not prejudiced in its ability to respond" *NewCSI, Inc.* at 259 (quoting *Lee v. United States*, 765 F.3d 521, 523-24 (5th Cir. 2014)). Emphasis added. Quoting its opinion in *Lee*, the Fifth Circuit further clarified the prejudice inquiry focuses on "whether the plaintiff had sufficient notice to prepare for and contest the defense." *Id.* at 525.

In *NewCSI,* Staffing 360 raised for the first time the alleged illegality of the liquidated damages clause in a post-verdict motion for entry of judgment as a matter of law. *NewCSI, Inc.* at 259. In holding that Staffing 360 had not satisfied *Lee*, the Fifth Circuit aptly reasoned that "[B]ecause Staffing 360's failure to raise the defense until ***after*** trial prevented NewCSI from developing facts that could have aided in contesting the defense, Staffing 360's timing prejudiced NewCSI's ability to respond. *NewCSI, Inc.* at 260. Emphasis added.

The facts of *NewCSI* are easily distinguishable. Unlike Staffing 360 who did not raise their liquidated damages clause argument until after trial, Dispatch raised the unenforceable liquidated

damages argument at least Court at least 4 months before trial, arguing it in oral summary judgment hearing 3 ½ months before trial, and asserting the defense as a contested issue of law in the pretrial order. (Docket Entry No. 79 at 3); (Docket Entry No. 84); (Docket Entry No. 86 at 5); (Docket Entry No. 97 at 4-5); (Docket Entry No. 97-1 at 7). The record is clear that the PCS had ample ability to respond before trial.

As further evidence that Dispatch did not waive its defense, Dispatch, at the conclusion of PCS's case-in-chief, moved this Court to make a judgement on partial findings under Rule 52(c) to hold that Section 2.7.4 is an unenforceable liquidated damages clause because it imposes a harsh penalty. This Court asked PCS's counsel in their opening statement to address the harshness of Section 2.7.4's acceleration of damages, but time and time again PCS stuck to its theory that the acceleration clause in Section 2.7.4 is what the parties bargained for, regardless of any harshness. During PCS's closing argument, this Court again asked PCS's counsel to respond to the unenforceable liquidated damages argument, PCS's counsel replied that he had read the *Steadfast* case and it didn't apply. Although PCS had more than ample opportunity to respond substantively to Dispatch's argument that Section 2.7.4 is an unenforceable liquidated damages clause both at least 4 months before trial and during trial, PCS inexplicably chose not to provide any substantive response until *after* trial when PCS filed an unsolicited post-trial brief. It is PCS, not Dispatch, who has waived its argument by failing to timely raise it with this Court.

Therefore, the record is clear that Dispatch satisfied the *Lee* exception by raising the liquidated damages argument at a pragmatically sufficient time and that PCS was not prejudiced in its ability to respond.

PCS relies on *Pasco ex. Rel. Pasco v. Knoblauch* to support its contention that the Fifth Circuit "requires introduction of defenses at a point that gives plaintiffs fair opportunity to

respond." (Docket Entry No. 133 at 6) (citing 566, F.3d 572, 577 (5th Cir. 2009). PCS misunderstands what the Fifth Circuit "requires" in this context. Here's the Fifth Circuit's full explanation on whether an affirmative defense is waived:

> However, under Rule 8(c) we do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, we look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial. *See Giles v. Gen. Elec. Co.,* 245 F.3d 474, 492 (5th Cir.2001) (finding no waiver where a new affirmative defense was raised in a joint pretrial order over a year after complaint was filed); *Lubke v. City of Arlington,* 455 F.3d 489, 499 (5th Cir.2006) (finding no waiver where a defense was raised in a pretrial motion in limine two years after the complaint was filed and just weeks before trial); *Allianz Versicherungs, AG v. Profreight Brokers, Inc.,* 99 Fed.Appx. 10, 12 (5th Cir.2004) (unpublished) (finding no waiver because "[t]he fact that [the plaintiff] had three months to consider and prepare for the limitations defense ... refutes [the] assertion that it was prejudicially surprised...."). This is consistent with the Supreme Court's interpretation **\*578** of the purpose of Rule 8(c), which is to give the opposing party notice of the affirmative defense and a chance to argue why it should not apply. *See Blonder–Tongue Lab. v. Univ. of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

*Pasco ex. Rel. Pasco* at 577-78.

PCS, yet again, takes another Fifth Circuit case out of context to support its argument. Citing to *Rogers v. McDorman*, PCS states that the "Fifth Circuit…has explicitly condemned defendants who attempt to 'lie behind a log' and ambush plaintiffs with unexpected defenses." 521 F.3d 381, 385 (5th Cir. 2008). (Docket Entry No. 133 at 7). However, a closer examination of *Rogers* reveals the Fifth Circuit's explicit flexibility. Here is the applicable paragraph in its entirety:

> While it is true that failure to abide by Rule 8(c) leads to waiver, there is some play in the joints. A defendant must "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."[1] The concern is that "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."[2] "Where the [affirmative defense] is raised in the trial court in a manner that does not result

---

[1] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).
[2] *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987).

in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is **386* not fatal."[3] "More specifically, a defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.' "[4]

*Rogers* at 385.

Contrary to PCS's assertions, the Fifth Circuit has well-established authority that accounts for the "overall context of the litigation" and allows for "some play in the joints" when determining whether a defendant raises an affirmative defense at a pragmatically sufficient time and plaintiff was not prejudiced in its ability to respond. By raising it with this Court at least 4 months before trial, arguing it in oral summary judgment hearing 3 ½ months before trial, and asserting the defense as a contested issue of law in the pretrial order, PCS had sufficient notice of Dispatch's position and could not have been unfairly surprised. (Docket Entry No. 79 at 3); (Docket Entry No. 84); (Docket Entry No. 86 at 5); (Docket Entry No. 97 at 4-5); (Docket Entry No. 97-1 at 7). This Court, therefore, should properly allow Dispatch to use the unenforceable liquidated damages as a defense despite Dispatch's failure to follow the strictures of Rule 8(c).

PCS's reliance on *LSREF2 Baron LLC v. Tauch* and *Crown Castle Fiber v. City of Pasadena* is misplaced. 751 F.3d 394 (5th Cir. 2014). 76 F.4th 425, 439 (5th Cir. 2023).

In those cases, the plaintiffs articulated facts as to *how* they were prejudiced in their ability to respond. Here, even in PCS's unsolicited post-trial brief, PCS fails to articulate *how* it was prejudiced, much less offer insight as to what additional discovery it would have conducted other than summarily stating that it was deprived of the opportunity to conduct discovery related to Dispatch's defense. Further, PCS does not raise new evidence in its Post-Trial Brief, nor does it identify the desired probative evidence which would have been offered at trial if only PCS had

---

[3] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983) (per curiam).
[4] *Arismendez v. Nightingale Home Health Care, Inc.,* 493 F.3d 602, 610 (5th Cir. 2007) (quoting *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir. 1986)).

more time. Indubitably, according to PCS's substantive arguments on the issue, the evidence needed was located in Section 2.7.4 all along because PCS claims it is entitled to its benefit of the bargain.

As the Fifth Circuit in *Crown* affirmed, "the main concern is 'unfair surprise.'" 76 F.4th 425, 439 (5th Cir. 2023). PCS admits in its post-trial brief that they had notice of Dispatch's defense at least 4 months before trial (Docket Control No. 133 at 2). The fact that PCS had at least four months to consider and prepare for the unenforceable liquidated damages defense refutes any credible argument that PCS was prejudicially surprised. PCS now claims, well past the 11th hour and into the next day, that Dispatch's defense was hidden despite PCS admitting it was in plain sight at least 4 months before trial.

IV.  CONCLUSION

For the foregoing reasons, the Court should reject PCS's arguments that Section 2.7.4 is enforceable as PCS's benefit of the bargain damages. The right of competent parties to make their own bargains is not unrestrained and enforcement of Section 2.7.4 would result in a disproportionate windfall to PCS of $1,437,426, all Fees due for the entire three-year initial term, irrespective of the loss or damage actually sustained or magnitude of the breach. Further, Dispatch did not wave the unenforceable penalty argument because PCS relied upon Section 2.7.4 in its own pleading, or alternatively, because PCS had sufficient notice of the unenforceable liquidated damages defense and was not unfairly prejudiced in its ability to respond.

Respectfully submitted,

**MAYER, LLP**

_____
Nathaniel R. Martinez
SBN: 24075725
Federal ID 27522
Raymond Johnson
SBN: 24129633
Federal ID 3866761
2900 North Loop West, Suite 500
Houston, Texas 77092
Tel: (713) 868-5560
Fax: (713) 864-4671
E-Mail: nmartinez@mayerllp.com
E-Mail: rjohnson@mayerllp.com
**ATTORNEYS FOR DEFENDANT
DISPATCH & SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025 a copy of the foregoing Defendant's Response to Plaintiff's Post-Trial Brief was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

_____
Nathaniel R. Martinez